IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

KELBY J. TREJO,

    Plaintiff

vs.

TOWN OF RUTHERFORDTON, a North Carolina municipal corporation,

CLINT INGLE, in his individual and official capacities, and

FREDDIE EUTEN, in his individual and official capacities

    Defendants.

**COMPLAINT**

Civil Action No.: _____

*Jury Trial Demanded*

COMES NOW Plaintiff Kelby J. Trejo ("Mr. Trejo"), by and through his attorneys at The Fuller Law Firm, P.C., as and for his Complaint against Defendants hereby states and alleges the following, upon information and belief:

**NATURE OF ACTION**

1. This is an action for damages arising from Defendants' discrimination against Mr. Trejo on the basis of national origin, race, retaliation, and the wrongful termination of his employment, in violation of: (a) Title VII of the Civil Rights Act of 1964; (b) 42 U.S.C. § 1981; (c) 42 U.S.C. § 1983; (d) the public policy of North Carolina, as articulated in N.C. Gen. Stat. § 143-422.2; and (e) the common law of North Carolina, including for wrongful discharge.

-1-

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and persons in this action under 28 U.S.C. § 1331, in that this action arises under the Constitution and laws of the United States (federal question), and venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), in that all Defendants reside herein and a substantial part of the events or omissions giving rise to the claims in this action occurred herein.

## PARTIES

3. Mr. Trejo is a Hispanic, Mexican American male police officer who resides and is domiciled in Polk County, North Carolina.

4. Defendant Town of Rutherfordton (the "Town" or "Defendant") is a municipal corporation established, organized, and existing under the laws of the State of North Carolina, as defined in N.C. Gen. Stat. § 160A-1(2), and is situated in Rutherford County, North Carolina. At the time of the events alleged herein, the Town maintained and was legally responsible for the administration of the Rutherfordton Police Department ("RPD"). The Town has waived its sovereign and governmental immunity by the purchase of liability insurance or by participating in in a local government risk pool, as provided by N.C. Gen. Stat. § 160A-485, and is liable as *respondeat superior* as to each of the state common law claims against Defendants Clint Ingle and Freddie Euten. The Town was Mr. Trejo's employer.

5. Defendant Clint Ingle is a citizen and resident of Rutherford County, North Carolina, and is being sued in his official and individual capacities. At all times herein mentioned, Defendant Ingle was acting in his capacity as Chief of Police of the RPD and was the commanding officer responsible for the training, supervision, and conduct of the RPD. Defendant Ingle, as Chief

of Police, had the final authority to establish municipal policy and custom with respect to police practice, policy, and procedure. At all times alleged herein, Defendant Ingle was a duly sworn law enforcement officer and public official employed by the Rutherfordton Police Department and was acting within the scope of his employment.

6. Defendant Freddie Euten resides in Rutherford County, North Carolina, and is being sued in his official capacity as a Lieutenant with the RPD, and he is being sued in his individual capacity.

## FACTUAL BACKGROUND

7. In or around September 2022, Mr. Trejo graduated from the basic law enforcement training program at Isothermal Community College. After his training, Mr. Trejo sought employment with RPD.

8. In or about October 2022, Mr. Trejo was hired by the RPD as a police officer. However, Mr. Trejo still needed to be approved by the State of North Carolina before he could be sworn into office. Mr. Trejo had submitted the relevant paperwork to the State for processing, but there were delays in approval.

9. During the interim, Mr. Trejo began experiencing derogatory comments and jokes by command-level staff members and co-workers of the RPD regarding his race and national origin.

10. Specifically, Mr. Trejo was subjected to these derogatory comments and jokes from Freddie Euten (who was then a Master Sergeant), Rick Gilbert (the Lieutenant over the Patrol Division), and Joey Holland.

11. Euten, Gilbert, and Holland joked about how Mr. Trejo was not a legal U.S. citizen and how Mr. Trejo did not have a green card, and that this was why he was not being approved by the State. Euten, Gilbert and Holland continued to make these racial and xenophobic "jokes" for the duration of the period when Mr. Trejo's approval from the State was pending, and they also made these comments in the presence of other officers and town employees.

12. In or around November 2022, the State finally approved Mr. Trejo to be sworn in as a police officer with the RPD. However, the racial and xenophobic comments from Euten, Gilbert, and Holland continued.

13. These comments included Mr. Trejo repeatedly being called "Mexican boy" (especially by Gilbert). Also, Holland repeatedly mocked Mr. Trejo's ability to speak Spanish by entering a room where Mr. Trejo was present and starting to utter nonsense and gibberish in a stereotypical accent as if he were speaking Spanish.

14. The racially derogatory comments by Euten, Gilbert, and Holland continued on a persistent basis throughout the year 2023. At all times, Mr. Trejo was offended, demeaned, and demoralized by these racially derogatory comments. But in or around early December 2023, the derogatory commentary escalated when the RPD brought in four new hires as police officers.

15. During the annual RPD Shop with a Cop program, Euten told Mr. Trejo that Holland had been telling the new hires that Mr. Trejo was part of the Mexican drug cartel, and that Mr. Trejo would "cut people's heads off and their hearts out." As Euten recounted Holland's comments, he laughed and treated the comments as a joke. Euten also made these comments loudly and in public at the entrance lobby of a Walmart store where multiple persons could hear.

16. Further, at the end of the event, when Mr. Trejo was being introduced to the new hires, he was again subjected to "jokes" and derogatory commentary that Mr. Trejo's family was involved with the Mexican cartel.

17. Mr. Trejo did not find these comments funny, particularly where they imputed violence to him.

18. On December 19, 2023, Mr. Trejo was in the RPD evidence/gun cleaning room with Euten, Gilbert, and one of the new hires when Euten told the new hire that he needed to be careful because Mr. Trejo was a part of the Mexican cartel, and that he would cut the new hire's head off. Again, Mr. Trejo was humiliated by these repeated derogatory comments and the imputation of lethal violence to him.

19. Shortly thereafter, as Mr. Trejo was discussing with Gilbert certain issues of concern about the operations of the RPD, Gilbert became angry and said to Mr. Trejo that "If you don't like how things are around here, you need to get your things and hop back over the border to where you came from." Euten was present for this comment.

20. After Gilbert's dismissive and racially derogatory comment, and Euten's apparent approval, Mr. Trejo decided that enough was enough.

21. He consulted with his direct supervisor about what he should do about these repeated derogatory comments. His supervisor referred Mr. Trejo to the information on the N.C. Department of Labor poster outside of the RPD Human Resources representative's office.

22. After reading the poster, and after some research, Mr. Trejo decided to submit a discrimination complaint.

-5-

Case 1:24-cv-00268-MOC-WCM    Document 1    Filed 10/28/24    Page 5 of 11

23. On December 20, 2023, Mr. Trejo reported and complained about the workplace discrimination he had been experiencing to Defendant's Human Resources representative, Sonya Outling, who told Mr. Trejo that he had done the right thing to complain and that she would bring the matter up to Defendant's town manager, Doug Barrick.

24. Immediately after complaining about the racial discrimination against him, Mr. Trejo began experiencing retaliation from Defendant's command staff.

25. On the very day of Mr. Trejo's complaint, Ingle, Euten, Gilbert, and Holland sequestered themselves in Gilbert's office, evidently to discuss how to respond to Mr. Trejo's complaint. These command officers deliberately avoided speaking to Mr. Trejo during that entire day.

26. Later in the day, anxious about the retaliation from the RPD command staff, Mr. Trejo wound up in a wreck with his patrol car. Thereafter, Ingle ordered Mr. Trejo to be suspended and sent home.

27. The next day, December 21, 2023, Mr. Trejo received a telephone call from Ingle, who informed Mr. Trejo that he was being terminated because of the wreck with the patrol car. But when Mr. Trejo inquired about the status of his discrimination complaint, Ingle replied that Mr. Trejo also was being terminated because he allegedly violated policy in making his discrimination complaint outside the chain of command.

28. After the call with Ingle, Mr. Trejo called Outling, the Human Resources representative, who reiterated that Mr. Trejo had done the correct thing in making his discrimination complaint, and that she would look into Ingle's statement to the contrary.

29. Later, Outling called back to rescind her earlier comments about the propriety of Mr. Trejo's discrimination complaint. When Mr. Trejo received the paperwork regarding his termination, however, it said nothing about violating policy in making the discrimination complaint.

30. Defendant terminated Mr. Trejo on December 21, 2023.

31. Mr. Trejo subsequently filed a charge of discrimination against Defendants with the U.S. Equal Employment Opportunity Commission, and on July 30, 2024, the EEOC issued a Notice of Right to Sue.

32. Mr. Trejo now has exhausted all his administrative remedies, and timely commences this action.

## COUNT I

*[Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 - Disparate Treatment and Retaliation]*

33. Mr. Trejo repeats and re-alleges paragraphs 1-32 of this Complaint, as if fully set forth and incorporated herein.

34. Mr. Trejo is a member of a protected class (Hispanic and Mexican American).

35. By the actions described herein, Defendants have subjected Mr. Trejo to discrimination on the basis of race and national origin, in violation of federal law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, and state law and policy.

36. Acting under color of law and pursuant to an official policy, practice or custom, Defendants intentionally, knowingly, and recklessly discriminated against Mr. Trejo on the basis

of race and national origin with respect to the terms, conditions, privileges and termination of his employment.

37. Mr. Trejo has suffered adverse employment actions, including termination, as part of this discrimination.

38. Defendants Ingle and Euten directly or indirectly approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants.

39. Defendants subjected Mr. Trejo to disparate treatment with respect to the terms and conditions of his employment on account of race and national origin, and was subjected to a continuing violation.

40. At all times, Mr. Trejo performed his job successfully and met Defendants' legitimate performance expectations.

41. When Mr. Trejo complained about Defendants' discriminatory behavior, Defendants retaliated against Mr. Trejo, resulting in his immediate termination the day after he lodged his discrimination complaint.

42. Mr. Trejo's complaint constituted protected activity.

43. Defendants took adverse employment action against Mr. Trejo as a direct and proximate result of his complaint about racially discriminatory treatment.

44. Consequently, Defendants are liable for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981, and 42 U.S.C. § 1983.

45. By reason of such culpability, Mr. Trejo has suffered actual harm and is entitled to recover compensatory damages, including financial losses, loss of earnings and benefits, loss of

future earning capacity, loss of reputation, past and future mental and emotional distress, all in an amount exceeding $10,000.

46. Further, Defendants' conduct was willful, wanton, intentional, and in total disregard of the rights of Mr. Trejo, such that Defendants are liable for punitive damages in an amount exceeding $10,000.

47. Mr. Trejo seeks recompense in accordance with the Prayer for Relief below.

## COUNT II

### *[Wrongful Discharge and Retaliation]*

48. Mr. Trejo repeats and re-alleges paragraphs 1-47 of this Complaint, as if fully set forth and incorporated herein.

49. Defendants retaliated against Mr. Trejo because he complained about being treated differently on account of race and national origin.

50. Mr. Trejo suffered an adverse employment action in that he was terminated by Defendants on December 21, 2023, after complaining about discriminatory treatment.

51. Defendants' conduct in terminating Mr. Trejo's employment in retaliation for his complaint constituted a wrongful discharge in violation of public policy, as articulated in N.C. Gen. Stat. § 143-422.2 and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981, and 42 U.S.C. § 1983.

52. As a direct and proximate cause of Defendants' retaliation and wrongful discharge in violation of North Carolina and federal public policy, Mr. Trejo has suffered actual harm, including compensatory damages consisting of financial losses, loss of earnings and benefits, loss of future earning capacity, loss of reputation, and past and future mental and emotional distress.

53. Defendants' conduct was willful, wanton, intentional, and in total disregard of the rights of Mr. Trejo, such that Defendants are liable for punitive damages in an amount exceeding $10,000.

54. Mr. Trejo seeks recompense in accordance with the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Trejo prays for judgment in his favor and against Defendants on each and every count in this Complaint for harm suffered due to the aforesaid discrimination, retaliation, violation of public policy, and statutory violations, and wrongful discharge, for which he seeks the following relief:

A. An award of compensatory damages, including damages for mental and emotional distress, reputational harm, and financial losses, in amount exceeding $10,000;

B. An award of economic damages for lost wages and benefits, including back pay and benefits, front pay and benefits, and loss of earning capacity, in an amount exceeding $10,000;

C. An award of consequential damages;

D. An award of pre- and post-judgment interest;

E. Injunctive relief, in that Mr. Trejo has been irrevocably injured by the discriminatory actions complained of herein. The injuries that Mr. Trejo suffered should be enjoined by this Court. Mr. Trejo has no other adequate or complete remedy other than this proceeding to have the actions and practices of Defendants as complained of herein remedied;

F. Equitable relief, including:

   i. Ordering Defendant to take appropriate corrective action to stop and prevent

racial discrimination and retaliation in the workplace;

    ii. Ordering Defendant to undergo anti-discrimination and anti-retaliation training;

    iii. Ordering Defendant to engage a research organization to assess the effectiveness of its anti-discrimination and anti-retaliation training; and

    iv. Ordering Defendant to pay the attorneys' fees and disbursements of Mr. Trejo's counsel to oversee and enforce the equitable remedies identified above;

G. An award of attorney's fees and the costs and disbursements of this lawsuit;

H. An award of punitive damages; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Mr. Trejo hereby requests a trial by jury of all issues in this action.

Dated: October 28, 2024                            Respectfully submitted,

                                                      s/ Trevor M. Fuller
                                                      N.C. Bar No. 27044
                                                      THE FULLER LAW FIRM, P.C.
                                                      307 W. Tremont Avenue, Suite 200
                                                      Charlotte, North Carolina 28203
                                                      Telephone: (704) 659-5600
                                                      Email: tmfuller@thefullerlawfirm.com

                                                      *Attorneys for Plaintiff Kelby J. Trejo*